**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

**HONORABLE S. JAMES OTERO, U.S. DISTRICT JUDGE**

UNITED STATES OF AMERICA,       )
                                )
                Plaintiff,      )
                                )            Case No.
        vs.                     )         2:14-cr-00512-SJO
                                )
PRISCILLA VILLABROZA,           )
                                )
                Defendant.      )
_____ )

REPORTER'S TRANSCRIPT OF
SENTENCING
THURSDAY, JUNE 20, 2016
9:07 A.M.
LOS ANGELES, CALIFORNIA

_____

CAROL JEAN ZURBORG, CSR NO. 7921, CCRR, RMR
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, SUITE 4311
LOS ANGELES, CALIFORNIA  90012-4565
(213) 894-3539

**UNITED STATES DISTRICT COURT**

2

**APPEARANCES OF COUNSEL:**


**FOR THE PLAINTIFF:**

    SANDRA R. BROWN
    Acting United States Attorney
    BY:  LEON WEIDMAN
    BY:  STEVEN ARKOW
         Assistant United States Attorneys
    United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012


**FOR THE DEFENDANT:**

    LAW OFFICES OF I. MARK BLEDSTEIN
    BY:  I. MARK BLEDSTEIN
         Attorney at Law
    15915 Ventura Boulevard, Suite 203
    Encino, California 91436

**UNITED STATES DISTRICT COURT**

**LOS ANGELES, CALIFORNIA; THURSDAY, JUNE 20, 2016**

**9:07 A.M.**

**--oOo--**

THE COURTROOM DEPUTY:  Calling Item No. 4:

Case number CR 14-00512 SJO; United States of America versus

(Defendant No. 1) Priscilla Villabroza.

Counsel, would you please state your appearances.

MR. WEIDMAN:  Good morning, Your Honor.

Assistant United States Attorneys Leon Weidman and Steven Arkow

for the United States.

MR. BLEDSTEIN:  Good morning, Your Honor.  Mark

Bledstein for Ms. Priscilla Villabroza, who is seated at

counsel table.

THE COURT:  And she can remain seated.  I understand

she has several medical conditions that will make it difficult

for her to stand.

The matter is here for sentencing.  The Court again has

reviewed the plea agreement.  The Court has reviewed the

presentence investigation report with a preparation date of

March 10th, 2016.  The Court has reviewed the letter

recommendation to the Court from the probation department with

a March 7th date.  And I would just place on the record that

the confidential letter to the Court that was offered by the

probation office has no information that's not otherwise

discussed in the PSR.

**UNITED STATES DISTRICT COURT**

The Court has reviewed the Government's position regarding sentencing.  The Government concurs with the guideline calculation in the PSR and the offense level.  The Government agrees that an adjusted offense level of 32 is appropriate, which includes a 4-level increase for role in the offense and then a 3-level downward adjustment for acceptance of responsibility.

The adjusted offense level 32 with a Criminal History Category III, the guideline range is 151 to 188 months.  There's a statutory maximum of 120, so the most that the Court can impose is 120.  There's an agreement in the plea to -- for the Court to also require restitution and then supervised release conditions.

The Court has reviewed Mr. Bledstein's sentencing pleading regarding sentencing.  Mr. Bledstein has placed in the pleading, which is consistent with the PSR, and referenced the prior conviction that the defendant has.  The defendant has a prior conviction for the same violation, health care fraud.  She was previously sentenced to 54 months, and she has been in custody since 2011.

The claim here by Mr. Bledstein is in sentencing the defendant, the Court should consider that she took little for herself in terms of salary in the scheme to defraud, and she was not a key beneficiary to the scheme.  The Government has offered a pleading that suggests otherwise.

In any event, Mr. Bledstein has also brought to the attention of the Court, consistent with the PSR, that the defendant is -- appears to be in poor health.  She's diabetic, has COPD, degenerative disc disease, and appears to have neuropathy, as I understand it.

Is that correct, Mr. Bledstein?

MR. BLEDSTEIN:  Yes, sir.

THE COURT:  There's an objection to -- I believe there's an objection to the adjustment for role in the offense.  And there is the claim that the Court can properly consider the defendant in Criminal History Category II, as opposed to III.  In any event, based on Mr. Bledstein's proposed calculations, the total offense would be 28, Criminal History Category II, with a guideline range of 87 to 108 months.  And Mr. Bledstein has -- or urges the Court to impose no more than 87 months.

The Court has reviewed the addendum to the presentence investigation report, and then the Court has reviewed the Government's response to the defendant's sentencing pleading. The Government in the response disputes vigorously defendant's claim that she was not a major beneficiary from the fraud.  The Government has brought to the Court's attention that several monies were diverted to other companies that were controlled by the defendant, and she was a major beneficiary.

One of the significantly aggravating circumstances in this case is the defendant has admitted, and the evidence or

information before the Court is certainly not in conflict, that the defendant, while she was in custody, engaged in the subject fraudulent scheme to again defraud Medicare while she was in federal custody.

She recruited and paid recruiters, including Dr. J, and she was well aware that the doctors were fraudulently certifying persons for hospice care who were not in need of hospice care, and that's the Government's -- in the Government's pleading.

So, Ms. Villabroza, did you receive a copy of the presentence investigation report?

Would you place the microphone next to her, please, so that we have a record.

Did you receive it, Ms. Villabroza?

(Counsel and defendant conferred off the record.)

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And did you also receive the addendum? The addendum is the two-page supplemental report that was prepared by the probation officer.  It looks like it was disclosed on June 13th.  Did you receive that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And did you have the opportunity to discuss the contents with your counsel?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And did you read the report yourself?

UNITED STATES DISTRICT COURT

THE DEFENDANT:  Yes.

THE COURT:  Did your lawyer answer any of the questions that you had in reference to the presentence investigation report?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you feel that you have had enough time to consider the addendum and the presentence investigation report prior to sentencing?

THE DEFENDANT:  Yes.

THE COURT:  Just in reference to the presentence investigation report, the record should reflect that Ms. Villabroza entered into a plea agreement wherein she pled guilty to Count Thirteen.  Count Thirteen charged a violation of Title 18 U.S. Code 1347, health care fraud, aiding and abetting; alleging in November of 2007, and continuing to June 2013, Ms. Villabroza, along with the other named defendants, including her daughter and others, executed and attempted to execute a scheme to defraud health care benefit programs, namely Medicare and Medi-Cal.

The plea was pursuant to a written plea agreement.  The parties stipulated to a base level of 6, an 18-level increase for loss which exceeded 3.5 million but was less than 9.5 million; a 3-level increase for fraud on a government health care program of more than 7 million; 2-level increase for abuse of position of trust; 2-level increase for

obstruction of justice.

And the parties agreed to not seek or argue in any way, orally or in writing, that any specific characteristics or adjustments relating to the offense level be imposed, with the exception of the Government's right to argue that the defendant -- and argue, and defendant reserves the right to oppose the additional specific offense characteristics for a 2-level adjustment for a fraud during the course of bankruptcy, and then a 4-level adjustment for role in the offense.

The loss to Medicare and Medi-Cal, as referenced in the plea, was 5,464,568 in reference to Medicare, and then 1,968,761 in reference to Medi-Cal.  The PSR -- or I'm sorry. The addendum to the PSR references that certain adjustments may be appropriate, so I will have the Government take a look at that to see if a reduction should be made in reference to the restitution.

The background of the case and all the pertinent information is included in the PSR.  In terms of the particular aggravating factors, in 2007 agents conducted a search of Medcare Plus Home Health Providers, a home health care agency owned and operated by Ms. Villabroza.

Ms. Villabroza learned that she was under investigation for health care fraud and the payment of illegal kickbacks in exchange for referral of beneficiaries to Medicare.  Thereafter she began the scheme wherein she purchased and financed the

purchase of California Hospice located in Covina.  And to conceal her ownership interest in California Hospice, she designated her daughter, Patrow, and Mr. Castillo as co-owners on documents filed with the State of California, Medicare and Medi-Cal and the Internal Revenue Service.  Ms. Villabroza and Ms. Patrow submitted an application to Medicare to transfer California Hospice's prior number.

So the major aggravating factor is while she was in custody for committing health care fraud, she devises another scheme to do the same, and it is hard to understand the reasoning and rationale behind all of this.

The Court would conclude that the base level is 6, as stipulated in the plea agreement; 18-level adjustment for loss, as stipulated in the plea agreement; a 3-level adjustment because the defendant was convicted of a health care offense involving a government health care program and the loss is more than 7 million.

The primary dispute is adjustment for role in the offense. The Court would overrule the objection regarding role in the offense.  It is pretty clear, and the Court has presided over a trial in the case, that Ms. Villabroza devised and initiated the conspiracy and then solicited the help of others, including her daughter, Ms. Patrow, and she operated California Hospice. She directed others in the defrauding of Medicare.  She was responsible for recruiting others, including the doctors, and

she qualifies as an organizer or leader, and, therefore, a 4-level adjustment would apply, over objection of counsel.

There is a 2-level adjustment for obstruction of justice that has been stipulated to in the plea agreement, and the Court also would conclude applies. And there is a 2-level adjustment pursuant to paragraph 59 of the PSR. The adjusted offense level is 35. She's accepted responsibility; it becomes 32.

She has a prior conviction in 8/1/2011 for a violation of Title 18 U.S. Code Section 1347, and so she qualifies for a Criminal History Category III.

She has a significant medical condition that is well documented in the plea agreement. And there is a maximum that the Court can impose of 120 months. The sentence is -- the sentence that the Court is required to impose would be consecutive to the sentence that she is now serving in the prior conviction.

So does -- Mr. Bledstein, do you have any additional comments, argument, any additional points that you would like to bring to the attention of the Court?

MR. BLEDSTEIN: Yes, Your Honor.

THE COURT: Please.

MR. BLEDSTEIN: Your Honor, as far as the -- obviously I wasn't here for the trial because my client had pled, but my understanding is that this California Hospice was

financed and set up back in 2007, and that would have been before my client went into custody, although I think there is some -- I think there was some evidence she may have had visits after she went into custody in August of 2011.  So I'm not sure how all that plays out.

As far as paragraph -- the Court is correct that my client has significant medical conditions.  She's been hospitalized on several occasions in the last year.  She is 70 years of age. If I counted correctly in paragraph 86, she takes 20 medications a day.  So my focus, since she's already been in custody for almost five years -- I think August it would be five years.  My focus, which is part of the 3553 analysis, is under 3553(a)(2)(D), a sentencing Court must consider the defendant's medical needs when imposing a sentence, and that there should be downward departures for extraordinary physical impairment.

I just think that in thinking about Ms. Villabroza, if both cases had been brought up together -- which is not the Government's fault -- but they're close in time, I just wonder how much time she would have gotten if both cases had come up at the same time.  She's been in custody for five years.  She has pled guilty.  She didn't choose to go to trial, which is to her benefit.

You know, her daughter's involved; her family's involved. Up until she was at least in her low 60s, she led a pretty

law-abiding life.  She is a mother, grandmother.  It just seems to me that if she did a total sentence -- and I realize the Court is not giving her credit for the past sentence that she's done, but it just seems to me that the Government, meaning Congress, in enacting 3553, and in looking at this particular defendant separately, because she's not a 20 -- I know defense attorneys always use age.  When people are young we say, "Well, they have a future ahead of them."  When people are old we say, "She doesn't have much time left," but that's true.  I don't know how much time Ms. Villabroza has left.

But it seems to me if the Court were to fashion a sentence where the total time she's done -- does is 10 years, which would mean another 5 or 6 or 7 on this one -- I guess what I'm trying to say, I know she is going to get a prison term, there's no question about that, but I would ask the Court to consider some of that as home confinement.

In other words, if the Court imposes 10 years, or if the Court follows my 87-month recommendation, I would ask the Court to let her out when she's about 74, 75 years old and let her do the rest of the time at home on some home confinement if she's still here at that time.  She's a very sick woman, and that is documented by the probation report.  She has a number of ailments, and I think that would be the humane thing to do.

I realize this is a serious case.  I realize she's done some serious things here.  It's not -- it has hurt society.

It's not a crime of violence, but it is a significant problem in our society, but I think that would still send a significant message, Your Honor, to all the people who do these kinds of crimes that they are not going to get off easy, but I don't think giving her 10 years -- and she would be 80 years old when she gets out -- is appropriate either.

I think there has to be some middle ground based on her -- her particular circumstances, the guideline -- and the guidelines 3553. This is a very ill woman, and I really don't think she's going to make it to age 80. So I would just ask the Court to consider a sentence that has some portion that's home confinement.

Thank you, Your Honor.

THE COURT: Thank you.

Who will address on behalf of the Government?

MR. WEIDMAN: Your Honor, I will.

And if I may approach the clerk, Your Honor.

THE COURT: Yes. Is this an additional pleading or document?

MR. WEIDMAN: Your Honor, this is the transcript of the sentencing in the previous case five years ago, and I wanted to read a portion.

THE COURT: Mr. Bledstein has a copy?

MR. BLEDSTEIN: I just got it this morning. I reviewed it very quickly.

MR. WEIDMAN:  I am just going to --

THE COURT:  If you could direct counsel and myself to the particular page.

MR. WEIDMAN:  I will, Your Honor, but before I do that, if I may say a few words.

Your Honor, as indicated, the Government recommends a sentence of 120 months.  The defendant has already benefited by the agreement that she plead to one count.  As you understand, the sentencing guidelines go way beyond that.  She did plead guilty to a previous offense in August of 2008 and was sentenced just about five years ago, August 1st, 2011.

During that time -- Mr. Bledstein mentioned the issue about whether she was conducting this while she was in custody.  She was, but as part of this, she was also on supervised release, and there could be a 3-point -- we are not going to argue that, but we could have asked for a 3-point enhancement for that alone, and we didn't.

She was sentenced on August 1st, 2011.  To note, as the record is clear, her daughter sent a letter to Judge Feess on July 24th, 2011, saying she had no control, nothing to do with the company.  And to note, as the chart indicated, and I can give the Court the exact date, four days later -- four days later -- the defendant wrote a check from California Hospice to Medcare, the company she controlled, for $5,000.

Last week defendant sent the Court a letter saying that

she was ill and that she wanted to accept responsibility for her acts. I would like to bring the Court's attention to line 24 on page 32 of the sentencing before Judge Feess on August 1st, 2011, which is five years -- will be five years ago in a couple days.

[As read] "The Defendant: Your Honor, I accept and I know that my conduct is making false -- is stealing falsely for the unlicensed nurses that violated the integrity of the medical system, and this is wrong. The integrity of the public health programs in this country are a top priority, and my actions very serious violation. I am taking full responsibility for my conduct, and I have cooperated fully with the Government with information by leaving the industry. Whatever the Government asked me to do, I did to the best of my ability."

This is while she is engaged in this crime. This is while she is directing the crime at California Hospice. This is when she is having her daughter perjuring herself before this Court, Judge Feess.

Then it goes on: [As read] "I currently serving financially on social security payments through my late husband who died in 2011 -- 2009, from employment benefits and money from renting a room in my house. I am in very poor health, and I am afraid I may die if I am in prison more than a few months. I ask Your Honor to consider all of these in making your decisions. Thank you."

UNITED STATES DISTRICT COURT

This is very similar to the letter that she sent the Court last week.  Your Honor, it's the Government's position that not only for punishment for committing this crime while she was being sentenced and investigation on the other, but representing to that Court that she had learned her lesson and she understands how important this program is, but as a deterrent for others who are committing this crime, which is a major, major problem in the United States, and in particular, this district, that for the purposes of deterrent, we believe that a sentence of 120 months is appropriate.

THE COURT:  The sentence that you propose is, I would think, likely a death sentence.  She is going to die in prison.

MR. WEIDMAN:  I can't -- she has illness.  I don't know if that's true or not.

THE COURT:  No, it's well documented that she has multiple ailments on that.

MR. WEIDMAN:  As to the other question as to these life insurance policies, there is evidence that some of the funds being diverted went into life insurance policies for her and Ms. Patrow.  My suggestion is after the restitution orders are ordered against the two of those, those funds can be applied by the clerk's office to the extent that they apply to Ms. Patrow's life insurance policy or the defendant's, and that would be used to pay against the restitution orders.  They are

very complicated transactions, Your Honor, and I just don't have all the details.

THE COURT:  Mr. Bledstein, yes?

MR. BLEDSTEIN:  I just wanted to make one quick comment.

THE COURT:  Yes.  Can you do that at the lectern, please.

MR. BLEDSTEIN:  Yes.

THE COURT:  Then I have a couple of comments and maybe a couple of questions.

MR. BLEDSTEIN:  It's my understanding that all the life insurance money has been seized, I believe, by the IRS.  I believe that's correct.  Thank you.

THE COURT:  Yes.

So as mentioned, I presided over the trial in this case, and what came to my attention are a couple of factors that seemed to be egregious, and that is the defendant, while she's in custody, after pleading before another judge, is involved in a scheme to defraud the Government again, and not just the Government, but the Medicare/Medi-Cal program.  And we all know the funds are finite, and she's taking from others in need.

But separate and apart from that, there was one instance wherein a person was placed on hospice who didn't understand that that person was going to be placed on hospice, didn't understand what it meant, and I believe that the result of that

UNITED STATES DISTRICT COURT

was that person was taken off the donor list at UCLA. They were on a donor list waiting for an organ transplant, and by being placed on hospice, that person was taken off the donor list. Thereafter it came to their attention, and they removed themself from hospice, but that's -- some of the acts here were relatively callous.

Separate and apart from that, it came to the attention of the Court that several of the beneficiaries who became part of this scheme, unbeknownst to them, they were waiving entering into health care directives, wherein they were waiving any right to have medical intervention if something would occur, and they had no understanding that's what they were signing.

So if they went into cardiac arrest, they wanted to live. In this scheme to defraud, they were giving up the right to have any type of intervention because they were being placed on hospice. That's a pretty callous scheme to defraud. Not only are they taking money from Medicare and Medi-Cal, but the beneficiaries are waiving their right to live, or at least have doctors make attempts to revive them if something happens.

MR. BLEDSTEIN: I don't disagree with the Court on the Court's comments, of course, but I don't know the dates of those things. I know my client obviously had set up California Hospice, but she went into custody in 2011. I don't know when these things occurred. I don't know if she had any ability to do much about --

THE COURT:  She knows what's going on.

MR. BLEDSTEIN:  I'm not saying she didn't.  I'm just saying I don't know if she actively had anything to do with those things, but, I mean, she's obviously involved in setting the thing up.

THE COURT:  I just don't understand the mindset of a person who would do this again while they're in custody.  It's just hard to understand how that type of person thinks. Ms. Villabroza has literally thrown her life away.  The last years of her life, I would imagine, are very important, not only to her, but to her family, but she's discarded them basically for profit.  I don't know what to say.

MR. BLEDSTEIN:  It doesn't appear -- sorry.  It doesn't appear to me that she's, you know, living very large. I don't know what to say about that.  It seems to me --

THE COURT:  The loss here to the companies is large. So in reference to restitution, what is the amount of restitution that remains?

MR. WEIDMAN:  It's as set forth in the presentence report, Your Honor.  It was the 7 million.  And it also was in the plea agreement.

THE COURT:  So no adjustments, is that what you're saying?

MR. WEIDMAN:  Yes, Your Honor.

In the sentencing of others where the restitution is less

than the total, unlike here, we wanted some -- we would ask that the Court order they don't get credit for payments.  But in this case, since we assumed that the restitution order for Ms. Villabroza will be the maximum, other people -- other defendants' restitution, if they be paid, will be paid.  But as to this point, no money has been paid towards restitution in this case.  So it would be the 7 million -- let me get the exact number, Your Honor.

The life insurance policy, those were seized, I believe, in the previous case, and there is a restitution order there, so those monies may be applied to that.  I just don't know.

THE COURT:  Ms. Villabroza, you're entitled to make a statement.  Do you have any statements you wish to make to the Court?

Does she have any statements?  I'm not sure.

(Counsel and defendant conferred off the record.)

MR. BLEDSTEIN:  I think she's going to make a statement.

THE DEFENDANT:  Your Honor, I'm sorry that I have committed this crime, and I just hope I could pay the debt to the society and the Government from the effect of this crime.  But still, I am asking your compassionate understanding of my health.  I still want to live a simple and -- a simple life so I can still see my family that they have not seen for five years, especially my sister, who is very sickly and want to see

me, and also my disabled grandson.

So I am requesting to have my sentence to be lower because this is not even a violent case.  And with my age, I cannot do any crime anymore, and maybe it would be better for me to be on a home confinement or a house arrest so I can meet my -- my health will be monitored and I can go to my own doctor and different specialists as needed.

I am -- I am pained and sad about that case, and I am very sorry.  Thank you for your kind consideration and attention.

THE COURT:  Thank you.

It's hard to accept your words when you've committed the same offense after being convicted of health care fraud.  And the nature of the fraud here is particularly despicable because the persons you are preying on are persons who have multiple ailments.  That was pretty clear in the course of the trial.

The one case was particularly heinous where that person was deprived of the opportunity to remain on a donor list, which is hope, and you deprived them of hope, and there were several others who didn't understand that they were waiving or giving up any right to have medical intervention if they were placed in a medical stress.  So there's a lot here that makes this case more serious.

That being said, I recognize that you have multiple ailments, and the Court has to take that into consideration. It's pretty clear to the Court that you are a very ill person.

That's well documented in the PSR.  Still, the Court has to fashion a sentence that reflects the seriousness of the offense, and protects the public.

The Court has to protect the public from you because it's likely that, based on your history, that you would -- it's likely that you would commit the offense again, if you could, and so the following sentence would be imposed:  The Court would conclude that the offense level is 32, Criminal History Category III.  The maximum that the Court can impose under the statute is 120 months.

It is ordered that defendant shall pay the United States a special assessment of $100 due immediately.  Any unpaid balance shall be paid during the period of imprisonment at the rate of not less than $25 per quarter and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program.

It is ordered that the defendant shall pay restitution in the sum of $7,433,329 as follows:  $5,464,568 to Medicare, $1,968,761 to Medi-Cal.  It's not likely that they will ever be paid by you.  Restitution shall be due during the period of imprisonment at the rate of not less than $25 per quarter and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program.

If any amount of restitution remains unpaid after your release from custody, monthly payments of at least 10 percent of your gross monthly income, but not less than $200, whichever

is greater, shall be made during the period of supervised release and shall begin 30 days after commencement of supervision.

Nominal restitution is ordered because the defendant's circumstances do not allow for more.  If the defendant makes partial payment, each payee shall receive approximately proportional payment.  The defendant shall be held jointly and severally liable with convicted co-defendants, Ms. Patrow, Briones, Mr. Castillo, for the amount of restitution ordered in this judgment.

The victims' recovery is limited to the amount of their loss, and the defendant's liability for restitution ceases if and when the victims receive full restitution.  Interest is waived.  The defendant does not have the ability to pay interest.

Pursuant -- the defendant shall comply with General Order 01-05.  All fines are waived.  The defendant -- the Court finds that the defendant has no ability to pay any fine.

Pursuant to the Sentencing Reform Act of 1984, it's the judgment of the Court that the defendant, Ms. Villabroza, is committed on Count Thirteen of the indictment to the custody of the Bureau of Prisons for a term of 96 months pursuant to United States Guideline 5G1.3(a).  The sentence will run consecutive to the undischarged term in Docket Number 08 -- I'm sorry, 08-00732-GAF.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of 3 years under the following terms:  Comply with General Order 05-02, General Order 01-05, including the special conditions in General Order 01-05; not commit any violation of local, state, federal law or ordinance.  During the period of supervision, the defendant shall pay the special assessment and restitution as ordered by the Court; not be employed in any position that requires licensing and/or certification by any local, state or federal agency without prior written approval of the probation officer; not engage as whole or partial owner, employee or otherwise in any business or profession that bills Medicare or Medi-Cal or any other publicly funded health care benefit program without the express approval of the -- express written approval of the probation officer.

The defendant shall apply all monies received from income tax refunds to the outstanding Court-ordered financial obligation.  In addition, the defendant shall apply all monies received from lottery winnings, inheritance, judgments, any anticipated or unexpected financial gains to the outstanding Court-ordered financial obligation.  The defendant shall cooperate in the collection of a DNA sample.  Drug testing is suspended.  The Court finds low risk for any type of substance abuse.

In sentencing the defendant, the Court has taken into

consideration the defendant's age and the Court has also taken into consideration the defendant's medical condition.  The sentence imposed by the Court has taken into account the amount of loss that the defendant has caused, including the types of programs involved, the Medicare and Medi-Cal programs.  The Court has taken into consideration the role of the defendant, or her abuse of a position of trust, the defendant's obstruction of justice and also her prior criminal history, which included the same offense.

The Court has imposed the sentence primarily to achieve protection of the community from this defendant, who's likely to engage in a similar scheme to defraud, and the Court has imposed a sentence that reflects the seriousness of the offense and hopefully causes general deterrence to others who engage in similar schemes.

Is there a recommendation as to where the defendant should continue to serve her time in custody?

MR. BLEDSTEIN:  We would request Southern California; Victorville, if possible.  That's where she was before.

THE COURT:  The Court would recommend a facility that can care for her medical condition, and the recommendation from counsel is that it be Southern California, in Victorville.

MR. BLEDSTEIN:  Thank you very much, Your Honor.

THE COURT:  Arguably, the sentence that's deserved

in this case is significantly higher than 96 months, but the Court is -- has imposed a sentence of 96.

Hopefully, Ms. Villabroza, you can complete your sentence and at least spend some partial time outside of custody.

MR. WEIDMAN:  Your Honor, may I clarify something on the restitution order?  I understand that the number is so high it's unlikely to be paid.

THE COURT:  Sure.

MR. WEIDMAN:  But in the sentencing two weeks ago with Castaneda, the Court ordered restitution jointly and several with not just her, but all the defendants in this case and the other cases that were related.  The Government provided some information.

In this case you didn't order joint and several liability with some of the defendants in this case, for example, Dr. J and Dr. Huang, but also some of the defendants in the other cases --

THE COURT:  Do you have proposed language?

MR. WEIDMAN:  Yes, Your Honor.

THE COURT:  Hand it to the -- I'll adjust the order.

THE COURTROOM DEPUTY:  I will come to you, Counsel.

THE COURT:  So the Court previously ordered that the defendant be held jointly and severally liable with Briones, Patrow and Castillo.  That portion of the order -- sentencing order by the Court is vacated and set aside, and the following

**UNITED STATES DISTRICT COURT**

order is made:  The defendant shall pay restitution to Medicare --

The sum remains the same; is that correct?

MR. WEIDMAN:  The sum remains, but this didn't include Medicaid, but it's the same.

THE COURT:  7,433,329 is the total:  Medicare 5,464,568; Medi-Cal 1,968,761.  The defendant shall be held jointly and severally liable with defendants in the related cases for the restitution amount to Medicare and Medi-Cal as ordered in this judgment.

The co-schemers include Priano, Ramon Priano; Kristen Castaneda; Janel Licayan; Mubina Siddiqui; Erwin Castillo; Sharon Patrow; Nancy Briones; Dr. J, the doctor's true name, S-r-i, W-i-j-e-g-o-o-n-a-r-a-t-n-a; and then Dr. Boyao Huang, H-u-a-n-g.

The defendant's liability for restitution ceases, if any, if and when the defendant pays the total of the restitution imposed as to defendant as ordered in this judgment, or when adding together the payments of all the co-schemers referenced by the Court, the largest restitution obligation of any of the co-schemers is satisfied.

No restitution payment made by any of the other co-schemers in this case or any defendant in any of the related cases shall be credited to defendant unless and until, when adding together the payments of all the below-listed schemers,

the ones referenced by the Court, the largest restitution obligation of any of these defendants is satisfied.  And that would be the order of the Court.

And I think that's about it.

The Court would advise the defendant of her right to appeal.  You have the right to appeal your sentence if you believe your sentence is contrary to the plea agreement or contrary to law.  With few exceptions, any notice of appeal must be filed within 14 days from today's date.

MR. BLEDSTEIN:  Thank you very much, Your Honor.

THE COURT:  Thank you.

And I'm going to return to counsel the proposed -- well, the reporter's transcript of the prior proceedings and then the language that was provided.

MR. WEIDMAN:  Yes, Your Honor.

(Proceedings concluded at 9:57 a.m.)

--oOo--

**UNITED STATES DISTRICT COURT**

**CERTIFICATE OF OFFICIAL REPORTER**


COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )


            I, CAROL JEAN ZURBORG, Federal Official Realtime Court Reporter, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the judicial conference of the United States.

Date:  September 7, 2017


                        /s/ CAROL JEAN ZURBORG
                        _____
                        CAROL JEAN ZURBORG, CSR NO. 7921, CCRR, RMR
                            Federal Official Court Reporter


**UNITED STATES DISTRICT COURT**